OPINION OF THE COURT
Mark H. Fandrich, J.
Petitioner, who is presently an inmate at Cayuga Correctional Facility, is challenging the New York State Division of Parole’s determination denying him parole release and directing that he be held for an additional 24 months. Petitioner commenced this proceeding pursuant to CPLR article 78 requesting that the court reverse and set aside respondent’s determination of June 26, 2012. Petitioner argues, among other things, that the Board has failed to comply with the legislative mandate of Executive Law § 259-c (4), focused on petitioner’s criminal history without fairly considering other statutory factors, and failed to articulate its reasoning for its decision.
Petitioner was convicted of criminal possession of a weapon in the third degree, and sentenced on May 9, 1996, as a persistent violent felony offender to a term of incarceration of eight years to life. Petitioner’s arrest and subsequent conviction stemmed from an incident whereby petitioner was found to be in possession of a loaded pistol (see respondent’s verified answer and return, exhibits C, D). At the time of his arrest, petitioner was on parole for a charge of burglary in the first degree. Prior thereto, petitioner had been convicted of manslaughter in the first degree and was on parole for that charge at the time of his arrest for burglary (see respondent’s verified answer and return, exhibit C).
This was petitioner’s sixth appearance before the Parole Board. On June 26, 2012, the Board denied petitioner parole and ordered him held for another 24 months. The Parole Board decision reads as follows:
“Denied — hold for 24 months. Next appearance date: 06/2014. Parole Denied. After a personal interview, record review and deliberation, this panel finds your release is incompatible with the public safety and welfare. Required statutory factors have been considered including your risk to the community, rehabilitation efforts, and your needs for successful community reintegration. Your record dates from a 1980 state prison term for Manslaughter 1st and Robbery 1st. You were paroled and *534 returned for an additional Burglary 1st conviction. You were again paroled and in 1994 found in possession of a loaded handgun, resulting in the instant offense of CPW 3rd. Consideration has been given to your improved behavior since 2009 and program accomplishments. However, due to your demonstrated pattern of weapon crimes, and poor history on parole, your release at this time is denied. There is a reasonable probability that you would not live and remain at liberty without violating the law.”
Petitioner filed and perfected an administrative appeal. On or about June 18, 2013, more than four months after the petitioner perfected his appeal, the administrative appeal decision notice was issued affirming the Parole Board’s decision. For purposes of this special proceeding, petitioner is deemed to have exhausted his administrative remedies.
Petitioner argues that respondent has not complied with the legislative mandate of Executive Law § 259-c (4), in that it failed to adopt a new rule as required by the amendments to the statute. In 2011, Executive Law § 259-c (4) was amended to include language that the Parole Board is to establish written procedures for its use in making parole decisions (see L 2011, ch 62, part C, subpart A, § 38-b). Such procedures are to “incorporate risk and needs principles to measure the rehabilitation of persons appearing before the board, the likelihood of success of such persons upon release, and assist members of the state board of parole in determining which inmates may be released to parole supervision” (Executive Law § 259-c [4]). In addition, as part of the same bill, Executive Law § 259-i was amended to repeal Executive Law § 259-i (1) and to place all of the factors that the Parole Board is required to consider into Executive Law § 259-i (2) (c). The changes to Executive Law § 259-i (2) (c) do not add any new factors to be considered, but merely reorganize the factors, making them easier to follow.
In response to the amendments to the Executive Law, the Division of Parole has adopted the COMPAS (Correctional Offender Management Profiling for Alternative Sanction) reentry risk assessment (see John Caher, Effect of Risk Assessment Rule on Parole Decisions is Unclear, NYLJ, Apr. 30, 2012). The COMPAS is an assessment tool that includes a questionnaire that asks the inmate specific questions and “delves deeply into the offender’s criminal record and disciplinary history, family and social support network, use of drugs and readiness for employment in predicting risk” (id.). The amendments to the *535 Executive Law require such a risk assessment to assist members of the Parole Board in determining whether an inmate should be released to parole supervision. The limited language of the amendments does not include any detailed directions for the Board to follow, however, and does not require the Board to give the COMPAS any particular weight in its decision making process (see e.g. Matter of Mance v Evans, 2013 NY Slip Op 32580[U] [Sup Ct, St. Lawrence County, Oct. 17, 2013]; Matter of Morales v NYS Bd. of Parole, 2013 NY Slip Op 31889[U] [Sup Ct, Franklin County, July 30, 2013]).
By adopting the COMPAS risk assessment and utilizing it in considering an inmate’s release, the Board has effectively complied with the minimal requirements of the amendments to the Executive Law. Here, a COMPAS risk assessment was performed on petitioner. On the surface, this appears to differentiate the instant matter from other recent cases where a COMPAS risk assessment was not performed and the petitioner was granted a new hearing. In the recent case of Matter of Garfield v Evans, for example, the Third Department held that the Board’s failure to use a COMPAS risk assessment at the petitioner’s hearing entitled petitioner to a new hearing (see Matter of Garfield v Evans, 108 AD3d 830 [3d Dept 2013]; see also Matter of Melendez v Evans, 111 AD3d 996 [3d Dept 2013]; Matter of Warmuth v New York State Div. of Parole, 110 AD3d 1136 [3d Dept 2013]; Matter of Aguayo v Evans, 110 AD3d 1135 [3d Dept 2013]; Matter of Thomas v Evans, 109 AD3d 1069 [3d Dept 2013]; Matter of Malerba v Evans, 109 AD3d 1067 [3d Dept 2013]).
However, while a COMPAS was performed here, there is no indication in the parole hearing minutes, the Board’s decision, or anywhere else in the record that the commissioners charged with weighing petitioner’s release even viewed, much less considered, the COMPAS risk assessment in making their determination (compare Matter of Mance v Evans, 2013 NY Slip Op 32580[U] [Sup Ct, St. Lawrence County, Oct. 17, 2013] [the parole board did not reference petitioner’s COMPAS in its written decision but noted it in the parole interview]).* The mere existence of a COMPAS risk assessment in an inmate’s file, as *536 here, is not enough. There must be some indication that the Board complied with the statute by considering the results of the COMPAS in reaching its decision. In fact, in the affidavit of Terrence X. Tracy, counsel to the New York State Board of Parole, Mr. Tracy states that “the Board’s written procedures require that when a COMPAS instrument has been created that the Board consider the same” (see respondent’s verified answer and return, exhibit K, ¶ 18). Thus, the legislature may not have provided any direction as to how the results of the risk assessment should be considered, but it appears that the legislature intended, and the Board requires, that the results actually be considered.
To allow the Board to merely have a COMPAS in an inmate’s file without so much as looking at the results is not enough to demonstrate the Board’s consideration of the inmate’s risk assessment. As stated above, something more than the mere existence of a COMPAS is required here. The Board must, at the very least, review and consider the COMPAS results in order to fulfill the statutory requirements of “measuring] the rehabilitation of persons appearing before the board, the likelihood of success of such persons upon release, and assisting] members of the state board of parole in determining which inmates may be released to parole supervision” (Executive Law § 259-c [4]). As there is no clear indication in the record that the Board actually reviewed and considered petitioner’s COMPAS risk assessment, petitioner is entitled to a de novo hearing consistent with the mandates set forth in the applicable amendments to the Executive Law. To hold otherwise would render the statutory amendments meaningless.
In light of this decision, the court need not reach the other contentions raised by petitioner.
Accordingly, based upon the foregoing, it is hereby ordered, adjudged and decreed that the petition is granted, without costs, and respondent’s decision of June 26, 2012, is annulled; and it is further ordered that this matter is remanded to the Board of Parole, which is directed to conduct, within 60 days of service of the court’s decision herein, a de novo hearing in accordance with this decision and the mandates of the Executive Law.

 The Board’s inclusion in its decision of language regarding an inmate’s “risk to the community” and “needs for successful community reintegration” is not enough to demonstrate that it considered petitioner’s COMPAS. In this court’s experience, similar language has been used in cases where no COMPAS risk assessment was performed at all. (See e.g. Matter of Greenleaf v *536 New York State Div. of Parole, Sup Ct, Cayuga County, July 11, 2013, Fandrich, J., index No. 1390/2012.)